UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN BOYD,

                            Plaintiff,                    3:14-CV-0397
                                                         (GTS/DEP)
v.

BROOME COMMUNITY COLLEGE; THE
BOARD OF TRUSTEES of Broome Community
College; and KEVIN DRUMM, as President of
Broome Community College,

                            Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI                   STEPHEN CIOTOLI, ESQ.
   Counsel for Plaintiff
7207 E. Genesee Street
Fayetteville, New York 13066

HON. ROBERT G. BEHNKE                         ROBERT G. BEHNKE, ESQ.
Broome County Attorney                        Broome County Attorney
   Counsel for Defendants
Broome County Office Building
60 Hawley Street
P.O. Box 1766
Binghamton, New York 13902

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this employment discrimination action filed by Stephen

Boyd ("Plaintiff") against Broome Community College ("BCC"), the Board of Trustees of BCC,

and Kevin Drumm in his official capacity as President of BCC (collectively "Defendants"), is

Defendants' motion to dismiss certain claims in Plaintiff's Complaint for failure to state a claim

upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 11.) For the

reasons set forth below, Defendants' motion is granted.

# I. RELEVANT BACKGROUND

Generally, liberally construed, Plaintiff's Complaint alleges as follows. (Dkt. No. 1.)
Plaintiff is an African-American who was employed by BCC in the position of Audio-Visual
Services Manager. (*Id.*, ¶ 11.) Plaintiff began employment in this position on March 3, 2006,
but was terminated effective January 25, 2013. (*Id.*, ¶¶ 6, 11.) At the time he was hired,
Plaintiff's job duties included, among other things, managing the schedule of usage for audio-
visual equipment, maintaining an inventory database of equipment, overseeing the repair and
replacement of equipment, and assisting in developing a budget for the maintenance and
purchase of audio-visual equipment. (*Id.*, ¶ 12.) Plaintiff's job duties continued to expand over
the course of time but he never received an increase in compensation. (*Id.*, ¶¶ 13-14.)

During his employment, Plaintiff was subjected to disparate treatment by BCC because
BCC continuously limited his authority to make certain decisions that were necessary to him to
perform his job. (*Id.*, ¶ 15.) These restrictions included limitations on Plaintiff's purchasing and
staff supervisory authority. (*Id.*, ¶ 16.) Similar limitations were not placed on the professional
authority of Caucasian managers and supervisors. (*Id.*, ¶ 20.) Furthermore, BCC fostered
discriminatory policies and an atmosphere in which Plaintiff was required to request that a
Caucasian supervisor direct Caucasian employees to perform certain tasks, despite Plaintiff
being the direct supervisor to these employees. (*Id.*, ¶¶ 18-19.)

On August 25, 2011, Plaintiff fell on a wet floor while he was working at BCC and
suffered injuries to his right side, including a fracture. (*Id.*, ¶ 39.) Plaintiff was instructed by his
care providers not to work while he recovered. (*Id.*, ¶¶ 40-41.) As a result, Plaintiff filed a
workers' compensation claim, which BCC believed to be fraudulent. (*Id.*, ¶ 42.) BCC

investigated Plaintiff's claim and referred it to the Broome County District Attorney's Office for possible criminal prosecution. (*Id.*, ¶¶ 42, 44.) BCC also attempted to file "civil service" charges against Plaintiff and denied him an Article 7 Civil Service Hearing. (*Id.*, ¶ 43.) On October 9, 2012, the criminal charges were dismissed upon the request of the District Attorney's Office in Binghamton City Court. (*Id.*, ¶¶ 45-46.) Approximately one month later, BCC advised Plaintiff that, if he withdrew his claim for workers' compensation benefits, BCC would withdraw its "disciplinary" charges against him with prejudice. (*Id.*, ¶ 46.) Plaintiff refused BCC's offer and his employment was terminated approximately two months later, through a letter dated January 11, 2013, purportedly due to fiscal challenges that BCC was facing. (*Id.*, ¶¶ 21, 48.) Thereafter, Plaintiff received additional correspondence advising him that the disciplinary charges were being withdrawn, without prejudice, due to his being laid off. (*Id.*, ¶¶ 49-50.)

BCC's claim regarding fiscal challenges was merely a pretext for Plaintiff's termination. (*Id.*, ¶ 50.) Specifically, the role and duties of an Audio-Visual Services Manager continued to expand throughout the years and many of Plaintiff's Caucasian co-employees, who held positions with similar responsibilities to those of Plaintiff, retained their employment with BCC. (*Id.*, ¶¶ 21, 33.) Furthermore, on December 16, 2012, BCC advertised a job-opening for the newly created position of Assistant Director of Technology Services, which paid approximately ten thousand ($10,000.00) more in salary than what Plaintiff was receiving.[1] (*Id.*, ¶¶ 22, 53.) In addition, BCC created both full-time and part-time positions for Information Technology and Media Service Technical Assistants, which were advertised on December 12, 2012, and paid

---

[1]     Plaintiff alleges that his salary was $34,000.00. (*Id.*, ¶ 53.) Plaintiff alleges that the original salary for the position of Assistant Director of Technology was $44,303.00 when advertised, which has since been increased to $55,000.00. (*Id.*)

approximately four thousand ($4,000.00) more in salary than what Plaintiff was earning. (*Id.*, ¶ 25.) The job duties in each of these new positions were substantially similar to those that Plaintiff was responsible for in his capacity as Audio-Visual Services Manager. (*Id.*, ¶¶ 23-26, 55-56.) Plaintiff applied for these positions but did not receive an offer of employment. (*Id.*, ¶ 27.) BCC hired mostly Caucasian individuals[2] for these positions, despite Plaintiff being more qualified and having civil service rights over these individuals. (*Id.*, ¶ 32.) Finally, according to BCC's records, Plaintiff was the only employee listed as a "lay-off" during the 2012 calendar year, the only African-American and the only individual over the age of 50 on staff. (*Id.*, ¶¶ 67, 69, 74.) The creation of these new positions undermines any bona fide economic reasoning behind Plaintiff's discharge. (*Id.*, ¶ 31.)

Based upon the foregoing factual allegations, the Complaint sets forth the following claims: (1) a claim that Plaintiff was fired in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.; (2) a claim that Defendants discriminated against Plaintiff on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; (3) a claim that Defendants deprived Plaintiff of his right to Equal Protection under the 14th Amendment of the United States Constitution and 42 U.S.C. § 1983 based on his race, age, and disability; (4) a claim that Defendants' actions were part of a continuing pattern and practice of discrimination, hostile work environment, and disparate treatment against Plaintiff, based upon his disability, in violation of the Americans with

---

[2] More specifically, Plaintiff alleges that the individual hired for the position of Assistant Director of Technology Services was Caucasian/Hispanic and 35 years old and that the individuals hired for the position of Technical Assistant were both Caucasian and younger than him. (*Id.*, ¶¶ 54, 59.) Plaintiff further alleges that the individual hired for the full-time Technical Assistant position was 25 years old and a former student of his. (*Id.*, ¶ 59.) Plaintiff alleges that he was 55 years old at the time he filed and served his Complaint. (*Id.*, ¶ 34.)

Disabilities Act ("ADA"); (5) a claim that Defendants' actions were part of a continuing pattern and practice of discrimination, retaliation, and/or harassment against Plaintiff, based upon his disability, in violation of the Rehabilitation Act; (6) a claim that Defendants retaliated against Plaintiff for filing a workers' compensation claim, in violation of the ADA and the Rehabilitation Act; (7) a claim that Plaintiff was subjected to unlawful discrimination and retaliation in violation of the New York State Human Rights Law ("NYSHRL"), New York Executive Law § 296; and (8) a claim that Plaintiff engaged in a protected activity when he filed for workers' compensation benefits and was unlawfully retaliated against by BCC for doing so, in violation of New York Executive Law § 296.  (*Id.*, ¶¶ 71-132.)

Defendants have moved to dismiss the following claims: (1) all of Plaintiff's federal claims against Defendants Drumm and Board of Trustees in their individual and official capacities on the basis that (a) the official-capacity claims are redundant of claims against a municipality in that BCC already is a defendant in this matter, (b) there is no individual liability under Title VII, the ADA, the ADEA, and the Rehabilitation Act, and (c) Plaintiff has failed to allege facts plausibly suggesting the personal involvement of these supervisory Defendants in an alleged constitutional violation for purposes of a claim under 42 U.S.C. § 1983; (2) Plaintiff's ADA claim on the basis that he failed to exhaust his administrative remedies before filing the claim in this Court; (3) Plaintiff's retaliation claims under the Rehabilitation Act and the ADA on the basis that filing a workers' compensation claim is not a protected activity under these statutes; and (4) Plaintiff's NYSHRL claim on the basis that he previously elected his remedy by filing an Article 78 petition in New York State Supreme Court and a claim with the New York State Division of Human Rights ("DHR") as well as for failing to include this claim in his Notice of Claim, as required by N.Y. County Law § 52.  (Dkt. No. 11, Attach. 4 [Defs.' Mem. of Law].)

## II.     RELEVANT LEGAL STANDARD

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cty.*, 549 F. Supp. 2d 204, 211, nn.15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision

on the merits" by the court.  *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases);

*Rusyniak v. Gensini,* 629 F. Supp. 2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing

Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal"

notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34(1)(b) at 12-61 (3d

ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding

that a pleading has failed to meet the "liberal" notice pleading standard.  *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556

U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate

decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).  In doing so, the Court

"retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct.

99 (1957),  that "a complaint should not be dismissed for failure to state a claim unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would

entitle him to relief."  *Twombly*, 550 U.S. at 561, 127 S. Ct. at 1968-69.  Rather than turning on

the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on

the *plausibility* of an actionable claim.  *Id*. at 556-70, 127 S. Ct. at 1965-74.  The Court

explained that, while this does not mean that a pleading need "set out in detail the facts upon

which [the claim is based]," it does mean the pleading must contain at least "some factual

allegation[s]."  *Id*. at 555, 127 S. Ct. at 1965, n.3.  More specifically, the "[f]actual allegations

must be enough to raise a right to relief above the speculative level [to a plausible level],"

assuming (of course) that all the allegations in the complaint are true.  *Id*. at 554, 127 S. Ct.

at1965.[3]

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at

---

[3]      It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007) (emphasis added). That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965, n.3 (citing *Conley*, 355 U.S. at 47) (emphasis added). That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough facts set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak,* 629 F. Supp. 2d at 214 & n.35 (explaining holding in *Erickson*).

1949.  Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully- harmed-me accusation."  *Id.*

Finally, a few words are appropriate regarding what documents are considered on a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).  The court may consider the following documents without triggering the summary judgment standard: "(1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference into the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case." *Planck v. Schenectady Cty.*, 12-CV-0336, 2012 WL 1977972, at *5 (N.D.N.Y. June 1, 2012) (Suddaby, J.).

## III.     ANALYSIS

### A.     Whether Plaintiff May Bring Claims Under Title VII, the ADA, ADEA, and the Rehabilitation Act Against Defendants Drumm and Board of Trustees

As indicated above in Part I of this Decision and Order, Defendants argue that Defendants Drumm and Board of Trustees must be dismissed from this action for the following three reasons: (1) an official-capacity claim is the functional equivalent of a claim against a municipality and, because BCC is already a Defendant in this action, the claims against Defendants Drumm and Board of Trustees are redundant; and (2) there is no individual liability under Title VII, the Rehabilitation Act, ADA, and the ADEA. (Dkt. No. 11, Attach. 4, at 2 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that Defendants Drumm and Board of Trustees may be named as individual defendants in their "official and representative capacities for purposes of designating them as agents of [BCC]." (Dkt. No. 14, at 3 [Pl.'s Opp'n Mem. of Law].) More specifically, Plaintiff asserts four arguments: (1) because the employment discrimination statutes broadly define the term "employer" to include an employer's agents, the term "employer" includes Defendants Board of Trustees and Drumm, each of whom is an agent of BCC; (2) in light of these definitions, district courts within the Second Circuit have held that a supervisory employee may be named in his official capacity as an agent of an employer if (a) the employee participated in the decision making process that forms the basis of the employment discrimination alleged or (b) employment decisions have been delegated to that employee; (3) in the alternative, district courts within the Second Circuit have held that a supervisory employee may be named in his *representative* capacity for the purpose of recovering damages against an employer that has not otherwise been named; and (4) again in the alternative, district courts within the Second Circuit have allowed individuals to be named as defendants in their official capacity "for the purpose of discovery." (*Id.* at 5-7.)

In reply, Defendants assert three arguments: (1) as an initial matter, Plaintiff ignores the Supreme Court case cited by Defendants in their memorandum of law (*Kentucky v. Graham*, 473 U.S. 167 [1985]), holding that, where a municipality has already been named, a claim against an employee of that municipality in his official capacity is redundant; (2) moreover, Plaintiff misleads the Court by citing to cases that have been overruled by *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1314 (2d Cir. 1995), which held that there is no individual liability under Title VII; and (3) indeed, one of the cases cited by Plaintiff for his discovery argument (*Coraggo v. Time, Inc.*, 94-

CV-5429, 1995 WL 242047 [S.D.N.Y. Apr. 26, 1995]) has not been followed by either its authoring district judge or this District.  (Dkt. No. 16, Attach. 2, at 1 [Defs.' Reply Mem. of Law].)

     After carefully considering the matter, the Court agrees with Defendants for the reasons stated in their memorandum of law and reply memorandum of law.  (Dkt. No. 11, Attach. 4, at 2-3 [Defs.' Mem. of Law]; Dkt. No. 16, Attach. 2, at 1-2 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following four points.

     With regard to Plaintiff's first argument, whether federal employment discrimination statutes broadly define the term "employer" as including an employer's "agents" does not somehow abrogate the numerous district court cases from this Circuit holding that, where (as here) a discrimination claim has already been asserted against an entity, it is redundant to assert an additional discrimination claim against the entity's agent in his or her official capacity, because the latter claim is the functional equivalent of a claim against the entity.  *See Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 133 (E.D.N.Y. 2013) (holding that, "to the extent Plaintiff asserts Title VII claims against the Individual Defendants in their official capacities, these claims must also be dismissed because they are, in effect, duplicative of the claim against OCA"); *Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 410-11 (E.D.N.Y. 2010) (noting that many courts in this circuit have rejected Title VII claims against individuals sued in their official capacity, and holding that, even if official capacity claims are permissible, official capacity suits must be dismissed if redundant in light of claims against the public entity employer) (collecting cases).

With regard to Plaintiff's second argument, while certain district court cases from within the Second Circuit have held that a supervisory employee may be named in his official capacity as an agent of an employer in certain circumstances, more recent and more numerous district court decisions from within the Circuit have rejected such official capacity claims. *See, e.g.*, *Milano v. Barnhart*, 05-CV-6527, 2007 WL 2042954, at *3 (S.D.N.Y. July 11, 2007) (stating that "the majority of courts in this circuit have held that the reasoning of *Tomka* would bar *any* Title VII suit . . . against an individual supervisor, regardless of the capacity in which the individual was acting") (collecting cases) (emphasis in original); *Garcia v. New York State*, 05-CV-5138, 2005 WL 2581926, at *2 (S.D.N.Y. Oct. 5, 2005) ("Courts within [the Second Circuit] have also generally found that individuals may not be sued in their official capacities under Title VII."); *Figueroa v. City of New York*, 198 F. Supp. 2d 555, 558 n.1 (S.D.N.Y. 2002) (noting that, "while the Second Circuit has not yet decided the issue, many courts have held that supervisors may not be sued in their official capacity [under Title VII]"); *Cooper v. Morgenthau*, 99-CV-11946, 2001 WL 868003, at *4 (S.D.N.Y. July 31, 2001) (noting that, "while the court of appeals has not yet ruled on this issue, the weight of authority in this circuit . . . holds that neither Title VII nor the ADEA permits an individual to be held liable in his official capacity").[4]

---

[4]     The Court finds that the Second Circuit's reasoning in *Tomka* extends to claims arising under the ADEA, ADA and Rehabilitation Act. *See Thorpe v. Piedmont Airlines, Inc.*, 926 F. Supp. 2d 453, 462 (N.D.N.Y. 2013) (Kahn, J.) (holding that, "[b]ecause the statutory language of the ADEA is similar to the language of Title VII, courts have concluded that the statutory language precludes individual liability"); *Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 163 (E.D.N.Y. 1996) (dismissing plaintiff's claims under Title VII, the ADA, and Rehabilitation Act because "there is no distinction made in Title VII or the ADA or Rehabilitation Act for lawsuits brought against other employees in their official capacities, as opposed to lawsuits brought against those employees in their individual capacities").

With regard to Plaintiff's third argument, the representative-capacity point of law cited by Plaintiff applies only where the employer has not already been named directly, which is not the circumstance in this case. *See, e.g., Romand v. Zimmerman*, 991 F. Supp. 806, 812 (N.D.N.Y. 1995) (McAvoy, C.J.) (permitting ADA and Rehabilitation Act claims against hospital personnel director and CEO in their representative capacities because the hospital had not been named directly); *Busby v. City of Orland*, 931 F.2d 764, 772 (11th Cir. 1991) (stating that "the proper method for a plaintiff to recover under Title VII is by suing the employer, *either* by naming the supervisory employees as agents of the employer *or* by naming the employer directly") (emphasis added); *Gardiner v. Dotson*, 94-CV-1894, 1994 WL 520885 at *1 (N.D. Ala. Sept. 19, 1994) (holding that an ADA claim against an employer may be made by naming the employer directly *or* by naming supervisory employees as agents of the employer) (emphasis added).

Finally, with regard to Plaintiff's fourth argument, the four cases that he cites are distinguishable from the current case in that they have been abrogated or rely on viable representative-capacity claims (which this case does not). To the extent any of the cases are not distinguishable, they are simply not persuasive. While keeping a party in a case despite the lack of any viable claim against that party may obviously "gain[] advantages in discovery, in the ultimate liability of the employing entity, and, of course, in the personal satisfaction of calling upon the alleged wrongdoer to publicly answer the accusations levied against him," *Leykis v. NYP Holdings, Inc.*, 899 F. Supp. 986, 991 (E.D.N.Y. 1995), it flies in the face of Fed. R. Civ. P. 26(b)(1), which defines the scope of discovery by existing claims and defenses (not vice versa). In addition, it ignores the lack of congressional authorization and the unfair prejudice to the

individuals. *See Yaba v. Cadwalader, Wickersham & Taft*, 896 F. Supp. 352, 354 n.1 (S.D.N.Y. 1995) ("There is no basis for keeping as defendants individuals who have no personal liability–Congress simply has not authorized it. Keeping such individuals as defendants will impose tangible costs on those individuals, including the need to devote the time and expense involved in defending against such claims. The courts cannot create their own causes of action or make individuals defend claims for which they are not liable."); *accord*, *Tishman v. Assoc. Press*, 05-CV-4278, 2005 WL 3466022, at *3 (S.D.N.Y. Dec. 16, 2005); *Wilcox v. PRC of New York L.P.*, 95-CV-1292, 1997 WL 141682, at *10 (N.D.N.Y. Mar. 24, 1997) (Munson, J.).

**B.**     **Whether Plaintiff Has Alleged Facts Plausibly Suggesting the Personal Involvement of Defendants Drumm and Board of Trustees Under § 1983**

As indicated above in Part I of this Decision and Order, Defendants argue that Plaintiff's § 1983 claim must be dismissed because the Complaint does not allege the personal involvement of Defendants Drumm or Board of Trustees in the constitutional violation alleged, nor does it allege their affirmative promulgation of a policy that led to the violations complained of. (Dkt. No. 11, Attach. 4, at 3 [Defs.' Mem. of Law].)

In opposition, Plaintiff argues that these individual Defendants participated in the decision-making for a number of actions that form the basis of Plaintiff's discrimination claims, including his termination, creating new jobs that replaced Plaintiff's old one under a pretextual excuse, and asserting meritless charges of fraud against Plaintiff. (Dkt. No. 14, at 8 [Pl.'s Opp'n Mem. of Law].) In addition, Plaintiff notes that Defendants Drumm and Board of Trustees held "the highest position of employment and policy-making authority within the entire institution" and "acting as essentially the CEO and governing body of the college, are ultimately responsible for creating and fostering the policies and atmosphere that contributed to the different forms of discrimination Plaintiff has faced while at [BCC]." (*Id.* at 5.)

-14-

In reply, Defendants argue that the factual allegations recited by Plaintiff in his opposition memorandum of law plausibly suggest only actions taken by the college and not the personal involvement by Defendants Board of Trustees and Drumm in the constitutional violation alleged. (Dkt. No. 16, Attach. 2 [Defs.' Reply Mem. of Law].)

After carefully considering the matter, the Court agrees with Defendants for the reasons stated in their memorandum of law and reply memorandum of law. (Dkt. No. 11, Attach. 4, at 3 [Defs.' Mem. of Law]; Dkt. No. 16, Attach. 2, at 1-2 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

The Second Circuit has held that "a defendant who occupies a supervisory position may be found personally involved" in the following ways:

> [1] The defendant may have directly participated in the infraction . . . . [2] A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong . . . . [3] A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue . . . . [4] Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

*Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Williams v. Smith*, 781 F.2d 319, 323-24 [2d Cir. 1996]).

Here, Plaintiff has alleged that Defendants Drumm and Board of Trustees were personally involved through their direct participation in the alleged constitutional violations and by creating and fostering policies whereby unconstitutional practices occurred (factors one and three above). However, the Complaint does not contain any factual allegations plausibly suggesting the personal involvement of either Defendants Drumm or Board of Trustees in the

constitutional violations alleged or their creation of a policy under which the alleged constitutional violations occurred. Rather, Plaintiff appears to suggest that their personal involvement should be inferred based upon their positions of authority within BCC. It is well established that this is insufficient to state a claim under § 1983. *See Davidson v. Desai*, 817 F. Supp. 2d 166, 196 (W.D.N.Y. 2011) (holding that "[t]he mere fact of supervisory authority is insufficient, under § 1983, to demonstrate liability"); *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (holding that a "defendant's supervisory authority is insufficient in itself to demonstrate liability under § 1983"); *Chrebet v. Cty. of Nassau*, 24 F. Supp. 3d 236, 248 (E.D.N.Y. 2014) (holding that, "[i]n order to claim personal involvement by a supervisor, a plaintiff must prove that 'the defendant participated directly in the alleged constitutional violation'") (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 [2d Cir. 1995]).

C. **Whether Plaintiff Failed to Exhaust His Administrative Remedies Regarding His ADA Claim and Whether Plaintiff Engaged in Protected Activity When He Filed a Workers' Compensation Claim**

As indicated above in Part I of this Decision and Order, Defendants argue that Plaintiff's discrimination claim under the ADA, his retaliation claim under the ADA, and his retaliation claim under the Rehabilitation Act should be dismissed for two reasons. First, Defendants argue that Plaintiff's ADA discrimination and retaliation claims should be dismissed because he failed to exhaust his administrative remedies regarding these claims. (Dkt. No. 11, Attach. 4, at 4 [Defs.' Mem. of Law].) Specifically, Defendants argue that, although Plaintiff filed charges with the EEOC and received a right-to-sue letter, he failed to include the ADA discrimination and retaliation claims with those charges. (*Id.*) Second, Defendants argue that Plaintiff's retaliation claims under the Rehabilitation Act and the ADA must also be dismissed because filing a workers' compensation claim is not protected activity under either of those statutes. (*Id.*)

In opposition to Defendants' first argument, Plaintiff notes that, in his primary filing with the DHR, Plaintiff included his disability, but did not specifically reference the ADA, because the DHR is a state agency and the ADA is a federal statute. (Dkt. No. 14, at 10 [Pl.'s Opp'n Mem. of Law].) However, Plaintiff argues that the filing listed his wrongful termination as a result of his disability and that he had filed for workers' compensation benefits. (*Id.* at 9.) Moreover, Plaintiff notes that, in the right-to-sue letter that he received from the EEOC, the EEOC referenced the ADA in the paragraph titled "Notice of Suit Rights," advising Plaintiff of his right to sue within 90 days. (*Id.*)

With respect to Defendants' second argument, Plaintiff argues that he possessed a good-faith reasonable belief that Defendants violated the law when they retaliated against him for filing a workers' compensation claim. (*Id.*, at 10.) More specifically, Plaintiff argues that he suffered a disability within the meaning of the ADA, which caused him to file a workers' compensation claim, and that Defendants retaliated against him by filing meritless charges of fraud and then wrongfully terminating his employment. (*Id.*, at 11.) Finally, Plaintiff argues that filing a workers' compensation claim is a protected activity under N.Y. Workers' Comp Law § 120, that being disabled is a protected status under the HRL, and that he was presenting a claim as a person with a disability. (*Id.*, at 15-16.)

In reply, Defendants argue that Plaintiff's complaint filed with the DHR did not include a claim under the ADA because it states only that Plaintiff charges Defendants with unlawful discriminatory practice because of "age, race/color," and there is no mention of disability. (Dkt. No. 16, Attach. 2, at 3 [Defs.' Reply Mem. of Law].) Similarly, Defendants argue that the DHR/EEOC filing document lists only Title VII and the ADEA as the charges against

Defendants and Plaintiff left the ADA box unchecked.  (Dkt. No. 16, Attach. 2, at 3 [Defs.'

Reply Mem. of Law]; Dkt. No. 11, Attach. 2 [Pl.'s EEOC/DHR filing doc.].)  Defendants argue

that Plaintiff should not be allowed to rely on pre-printed form language in the Dismissal and

Notice of Rights letter from the EEOC, which references the ADA, when Plaintiff listed only

Title VII and the ADEA in his charges.  (Dkt. No. 16, Attach. 2, at 3 [Defs.' Reply Mem. of

Law].)  Finally, Defendants reiterate their argument that filing a workers' compensation claim is

not a protected activity and, as a result, Plaintiff's retaliation claim must be dismissed.  (*Id.*, at

4.)

      After carefully considering the matter, the Court agrees with Defendants for the reasons

stated in their memorandum of law and reply memorandum of law.  (Dkt. No. 11, Attach. 4, at 4-

5 [Defs.' Mem. of Law]; Dkt. No. 16, Attach. 2, at 4 [Defs' Reply Mem. of Law].)  To those

reasons, the Court adds the following analysis.

### 1.      Plaintiff's Administrative Complaint and His ADA Claim

      "A district court only has jurisdiction to hear claims brought pursuant to the ADA that

are either contained in the EEOC charge or that are 'reasonably related' to the claims in the

EEOC charge." *Agosta v. Suffolk Cty.*, 981 F. Supp. 2d 167, 172 (E.D.N.Y. 2013).  Although

"merely checking a box, or failing to check a box does not necessarily control the scope of the

charge, the absence of a checkmark weighs against concluding that the plaintiff has alleged

discrimination on the basis of the claim designated by that box." *Holmes v. Fresh Direct*, 13-CV-

4657, 2015 WL 4885216, at *5 (E.D.N.Y. Aug. 5, 2015) (internal quotations and citations

omitted).  "Still, 'the more critical analysis is whether there is any explanation or description

supporting a particular claim.'" *Holmes*, 2015 WL 4885216, at *5 (quoting *Cooper v. Xerox*

*Corp.*, 994 F. Supp. 429, 436 [W.D.N.Y. 1998]).  With respect to claims that are "reasonably

related," the Second Circuit has explained as follows:

> This [court] has recognized that "[a] claim is considered
> reasonably related if the conduct complained of would fall within
> the scope of the EEOC investigation which can reasonably be
> expected to grow out of the charge that was made." *Fitzgerald v.
> Henderson*, 251 F.3d 345, 359-60 (2d Cir. 2001).  In this inquiry,
> "the focus should be 'on the factual allegations made in the
> [EEOC] charge itself, describing the discriminatory conduct about
> which a plaintiff is grieving.'" *Deravin v. Kerik*, 335 F.3d 195, 201
> (2d Cir. 2003) (quoting *Freeman v. Oakland Unified Sch. Dist.*,
> 291 F.3d 632, 637 [9th Cir. 2002]).  The central question is whether
> the complaint filed with the EEOC gave that agency "adequate
> notice to investigate discrimination on both bases." *Id.* at 202.  The
> "reasonably related" exception to the exhaustion requirement "'is
> essentially an allowance of loose pleading' and is based on the
> recognition that 'EEOC charges frequently are filled out by
> employees without the benefit of counsel and that their primary
> purpose is to alert the EEOC to the discrimination that a plaintiff
> claims [he] is suffering.'" *Id.* at 201 (quoting *Butts v. City of New
> York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402 (2d Cir.
> 1993).

*Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006).

Having reviewed the documents filed with the DHR and EEOC,[5] the Court is

unpersuaded that Plaintiff sufficiently alleged facts related to his disability which would

---

[5]        The Court notes that it may properly consider these documents, which are attached to
Defendants' motion, as incorporated by reference by Plaintiff's Complaint because the Complaint alleges
that Plaintiff filed charges with both the DHR and EEOC and received a right-to-sue letter.  (Dkt. No. 1,
¶¶ 3-4 [Pl.'s Compl.].)  *See Cortec Ind., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (holding
that "when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document]
upon which it solely relies and which is integral to the complaint, the defendant may produce the
[document] when attacking the complaint for its failure to state a claim, because plaintiff should not so
easily be allowed to escape the consequences of its own failure."); *Muhammad v. New York City Trans.
Auth.*, 450 F. Supp. 2d 198, 204 (E.D.N.Y. 2006) (noting that "Courts in this Circuit have repeatedly held
that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated
by reference.").  Moreover, Plaintiff's EEOC charge and the agency's determination are both public
records, of which this Court may take judicial notice.  *See Moll v. Telesector Res. Grp., Inc.*, 04-CV-
0805, 2005 WL 2405999, at *4 (W.D.N.Y. Sept. 29, 2005) (citing cases).

adequately give notice to the DHR/EEOC to investigate a discrimination claim on that basis. Specifically, Plaintiff's administrative complaint does not mention a work place accident, Plaintiff's injuries, or that he is disabled. Rather, the last paragraph of Plaintiff's factual allegations states only that "Claimant makes a claim that he was retaliated against for making a Workers Compensation claim." (Dkt. No. 11, Attach. 2, at 7, ¶ 36 [Pl.'s DHR Compl.].) This allegation, in and of itself, is insufficient to alert an administrative agency that Plaintiff is disabled and has been discriminated against because of his disability. Indeed, the remainder of the documents filed with the DHR/EEOC make no mention of a disability; rather, they focus exclusively on Plaintiff's other discrimination charges. For example, Plaintiff's administrative complaint is captioned "Complaint For Racial and Age Discrimination," and, as Defendants point out, Plaintiff left the ADA box unchecked on his filing document. (*See generally* Dkt. No. 11, Attach. 2.) The fact that Defendants *may have been* aware that Plaintiff was disabled is not dispositive under the circumstances. The Court notes that "[t]he purpose of [the] exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 385 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 [2d Cir. 1998]).

For all these reasons, Plaintiff's claims under the ADA are dismissed for failure to exhaust his administrative remedies.

## 2. Plaintiff's Retaliation Claims Under the Rehabilitation Act and NYSHRL

The Court agrees with Defendants that filing a workers' compensation claim is not protected activity for purposes of the Rehabilitation Act or NYSHRL. *See Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 508 (S.D.N.Y. 2013) (holding that request for workers'

compensation benefits is "not a protected activity because it does not constitute an opposition or complaint about unlawful discrimination"); *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012) (holding that the filing of a workers' compensation claim is not protected activity under the ADA). Moreover, "[t]he Workers' Compensation Law . . . provides the exclusive remedy for an employee's claim that his employer discriminated or retaliated against him for filing, or attempting to file, a workers' compensation claim." *De la Cruz v. City of New York*, 783 F. Supp. 2d 622, 646 (S.D.N.Y. 2011) (citing N.Y. Workers' Comp. § 120); *Brook v. Overseas Media, Inc.*, 69 A.D.3d 444, 445 (N.Y. App. Div. 1st Dept. 2010) (holding that "Plaintiff's sole remedy for retaliatory discharge . . . is to file a complaint with the Workers' Compensation Board").

For all these reasons, Plaintiff's retaliation claims under the Rehabilitation Act and the NYSHRL are dismissed.

### D. Whether Plaintiff Previously Elected His Remedies by Commencing an Article 78 Proceeding and Filing a Complaint with the NYSHRL

Defendant argues that Plaintiff's NYSHRL claim must be dismissed for two reasons: (1) because Plaintiff previously filed a complaint with the DHR, he has elected his remedy and is precluded from bringing this claim in the courts; and (2) Plaintiff failed to include his NYSHRL claim in his Notice of Claim, as required by N.Y. County Law § 52. (Dkt. No. 11, Attach. 4, at 5 [Defs.' Mem. of Law].)

Regarding Defendants' first basis for dismissal, Plaintiff again asserts two arguments. First, Plaintiff notes that the DHR dismissed his complaint for lack of jurisdiction, holding that Plaintiff could have raised his discrimination claims in his Article 78 proceeding in New York Supreme Court. (Dkt. No. 14, at 13 [Pl.'s Opp'n Mem. of Law].) Plaintiff argues that he should

be allowed to pursue his discrimination claim in this Court because the dismissal of his complaint for "lack of jurisdiction" by the DHR was arbitrary and capricious, given that he could not have adequately litigated his discrimination claim in his Article 78 proceeding.[6] (*Id.*)

Second, Plaintiff argues that, because the DHR dismissed his complaint for lack of jurisdiction, the dismissal should be considered one for administrative convenience, rather than one on the merits, which would allow this Court to consider his NYSHRL claim. (*Id.* at 14.)

Regarding Defendants' second basis for dismissal, Plaintiff asserts two arguments. First, Plaintiff argues that Defendants would not be prejudiced if forced to defend against a NYSHRL claim because his Notice of Claim alleges claims of discrimination and retaliation. (*Id.* at 14-15.) Furthermore, while Plaintiff concedes that he did not include a NYSHRL claim in his Notice of Claim, he argues that he included a claim under "the N.Y.S. Civil Rights Law," which is the HRL. (*Id.* at 14-15.) According to Plaintiff, the fact that he "may not have used the exact words or specifically referenced the Human Rights Law does not change the fact that Defendants were on notice of Plaintiff's claims of discrimination and retaliation." (*Id.* at 15.)

Second, Plaintiff argues that, under N.Y. Gen. Law § 50-e(6), a mistake, omission, irregularity or defect made in good faith, not pertaining to the manner or time of service, may be disregarded by the Court. (*Id.* at 15.) Plaintiff argues that the Defendants have not suffered from any unfair prejudice or the inability to investigate and defend themselves against Plaintiff's HRL claims and that they became aware of these claims when Plaintiff filed his complaint with the DHR. (*Id.*)

---

[6]     More specifically, Plaintiff argues that Article 78 proceedings are summary proceedings, conducted without discovery, and the standard of review is more stringent than in a proceeding before the DHR. (Dkt. No. 14, at 13 [Pl.'s Opp'n Mem. of Law].) According to Plaintiff, this makes the DHR the proper forum for a discrimination claim, not an Article 78 proceeding. (*Id.*)

In reply to Plaintiff's first argument, Defendants argue that, to the extent Plaintiff is attempting to appeal the determination of the DHR to this Court, Plaintiff's claim should be dismissed under the *Rooker-Feldman* doctrine and/or the doctrine of res judicata. (Dkt. No. 16, Attach. 2, at 5 [Defs.' Reply Mem. of Law].) Furthermore, Defendants argue that dismissals for lack of jurisdiction are decisions on the merits, rather than ones for administrative convenience. (*Id.*)

With respect to Plaintiff's second argument, Defendants argue that the New York Civil Rights Law is different than the HRL, which is found in the N.Y. Executive Law, and that, because Plaintiff is not proceeding *pro se*, there is no excuse for such a mistake. (*Id.* at 5-6.) Finally, Defendants note that it is an open question whether a district court has jurisdiction to correct, supplant, or disregard mistakes, omissions, or defects in a notice of claim under N.Y. Gen. Law § 50-e(6). (*Id.* at 6.) However, Defendants argue that the legislative intent, as set forth in N.Y. Gen. Mun. Law § 50-e(7), is that all applications under § 50-e must be brought in the Supreme Court or County Court of New York. (*Id.*)

After carefully considering the matter, the Court agrees with Defendants for the reasons stated in their memorandum of law and reply memorandum of law. (Dkt. No. 11, Attach. 4, at 5 [Defs.' Mem. of Law]; Dkt. No. 16, Attach. 2, at 5 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following analysis.

"[A] person claiming to be aggrieved by an unlawful discriminatory practice may seek relief either from a court of appropriate jurisdiction or from the [DHR] or any local commission on human rights, but not both." *Lennon v. New York City*, 392 F. Supp. 2d 630, 640-41 (S.D.N.Y. 2005). "When a plaintiff elects to pursue claims of discrimination through

administrative proceedings before the [DHR], [N.Y. Executive Law] section 297(9) 'poses an insuperable jurisdictional bar' to subsequently raising those claims of discrimination in court.'" *Morris v. Bellevue Hosp. Ctr.*, 09-CV-5692, 2012 WL 5932784, at *4 (E.D.N.Y. Nov. 27, 2012) (quoting *Smith-Henze v. Edwin Gould Servs. for Children & Families*, 06-CV-3049, 2006 WL 3771092, at *3 [S.D.N.Y. Dec. 21, 2006]). "Thus, Plaintiff's election of remedies deprives the Court of subject matter jurisdiction over the state law claim of discrimination." *Morris*, 2012 WL 5932784, at *4 (internal quotations omitted). "The only exceptions to this jurisdictional bar are when the complaint has been dismissed on grounds of administrative convenience, on grounds of untimeliness, or on grounds that the election of remedies is annulled." *Id.* (internal quotations omitted). "This express limitation on the election of remedies applies equally to NYSHRL claims brought in state court and to those brought as pendant claims in federal court." *Id.* (citing *Lennon*, 392 F. Supp. 2d at 641).

In the present case, the Court is unpersuaded that the DHR's dismissal for lack of jurisdiction should be construed as one for administrative convenience. Specifically, as Defendants note, dismissals for administrative convenience are addressed by 9 NYCRR § 465.5(e). While this section provides a non-exhaustive list of the grounds for dismissal for administrative convenience, 9 NYCRR § 465.5(d) specifically discusses dismissals for lack of jurisdiction, which suggests that the latter was not intended to be included in the former. Furthermore, in *Moodie v. Fed. Reserve Bank of New York*, 58 F.3d 879 (2d Cir. 1995), a plaintiff's discrimination claim was dismissed by the DHR for lack of jurisdiction and the Second Circuit concluded that, under N.Y. Executive Law § 279(9), the plaintiff had made an election of remedies in proceeding before the DHR before filing in federal court. *Moodie*, 58

F.3d at 882; *see also Whitney v. State Human Rights Appeal Bd.*, 105 A.D.2d 991, 992 (N.Y. App. Div. 3d Dept. 1984) (holding that plaintiff was precluded from pursuing a discrimination claim in the DHR because he had previously commenced an Article 78 proceeding).  Similarly, in the present case, the Court cannot simply ignore the DHR's dismissal for lack of jurisdiction and allow Plaintiff to pursue his NYSHRL claim.

     **ACCORDINGLY**, it is

     **ORDERED** that Defendants' motion to dismiss (Dkt. No. 11) is **<u>GRANTED</u>**; it is further

     **ORDERED** that Plaintiff's claims under Title VII, the ADA, the ADEA, the Rehabilitation Act, and 42 U.S.C. § 1983 against Defendants Drumm and Board of Trustees in their individual and official capacities are **<u>DISMISSED</u>**; it is further

     **ORDERED** that Plaintiff's ADA claim against Defendant BCC, retaliation claim under the Rehabilitation Act against Defendant BCC, and NYSHRL claim against Defendant BCC are **<u>DISMISSED</u>**; and it is further

     **ORDERED** that **<u>SURVIVING</u>** Defendants' motion are Plaintiff's claims under Title VII, the Rehabilitation Act, the ADEA, and 42 U.S.C. § 1983 against Defendant BCC; and it is further

     **ORDERED** that the deadline to file any dispositive motions is 1/11/16, pursuant to Magistrate Judge Peebles' Text Order (Dkt. No. 17) dated 7/23/15.  In the event that no dispositive motions are filed, the Court will schedule a pretrial conference at that time to schedule a trial date.

Dated: November 10, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief, U.S. District Judge