UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN BOYD,

                            Plaintiff,                   3:14-CV-0397
                                             (GTS/DEP)
v.

BROOME COMMUNITY COLLEGE,

                            Defendant.
_____

APPEARANCES:                                   OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI          STEPHEN CIOTOLI, ESQ.
    Counsel for Plaintiff
7207 E. Genesee Street
Fayetteville, New York 13066

HON. ROBERT G. BEHNKE                ROBERT G. BEHNKE, ESQ.
Broome County Attorney's Office          Broome County Attorney
    Counsel for Defendant
Broome County Office Building
60 Hawley Street, P.O. Box 1766
Binghamton, New York 13902

GLENN T. SUDDABY, Chief United States District Judge

## <u>DECISION and ORDER</u>

Currently before the Court, in this employment discrimination action filed by Stephen

Boyd ("Plaintiff") against Broome Community College ("Defendant") based on his race, age and

disability, is Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt.

No. 19.) For the reasons set forth below, Defendant's motion is granted, and Plaintiff's

Complaint is dismissed.

# I.      RELEVANT BACKGROUND

## A.      Summary of Plaintiff's Claims

Because this Decision and Order is intended primarily for the review of the parties, and they have (in their memoranda of law) demonstrated an adequate understanding of allegations underlying Plaintiff's claims against Defendant, the Court will not recite those allegations in this Decision and Order, but will merely summarize Plaintiff's claims.

Generally, Plaintiff's Complaint asserts the following four claims against Defendant: (1) a claim that Defendant fired Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; (2) a claim that Defendant discriminated against Plaintiff on the basis of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*; (3) a claim that Defendant deprived Plaintiff of his right to Equal Protection under the 14th Amendment of the United States Constitution and 42 U.S.C. § 1983 based on his race, age, and disability; and (4) a claim that Defendant's actions were part of a continuing pattern and practice of discrimination, retaliation, and/or harassment against Plaintiff, based upon his disability, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. (Dkt. No. 1, at ¶¶ 71-132; Dkt. No. 18, at 25.)

## B.      Summary of Parties' Arguments on Defendant's Motion

### 1.      Defendant's Memorandum of Law

Generally, in its memorandum of law, Defendant argues that it is entitled to summary judgment for two reasons. (Dkt. No. 19, Attach. 23.)

First, Defendant argues, all of Plaintiff's claims must be dismissed because, pursuant to the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792

(1973) (which governs all of Plaintiff's claims), even assuming Plaintiff has established a prima facie case of discrimination, Defendant has met its burden of showing (and indeed Plaintiff is collaterally estopped from denying) the existence of a legitimate, non-discriminatory reason for its action (i.e., Defendant had previously determined it needed to reorganize Plaintiff's department, Defendant was facing fiscal challenges due to a reduction in New York State funding and a decline in student enrollments, and Plaintiff's position was among the twenty-eight positions that were no longer needed), and Plaintiff has not produced evidence showing that Defendant's asserted reason is pretextual (and for claims under the Rehabilitation Act, that the sole reason for Defendant's action was unlawful discrimination).  (*Id*.)

Second, Defendant argues, Plaintiff's claim under the Rehabilitation Act must be dismissed for the alternative reason that Plaintiff does not suffer from a disability as defined by the Rehabilitation Act (and indeed, when a physician released him to return to work in October of 2011, the physician released him with no work restrictions).  (*Id*.)

### 2.  **Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff asserts three arguments.  (Dkt. No. 24.)

First, Plaintiff argues, he has produced seven pieces of evidence showing that Defendant's asserted reasons for his termination were pretextual: (a) the fact that his termination (in January of 2013) closely followed his rejection (in November of 2012) of Defendant's offer to settle its charges of workers compensation fraud against him in exchange for his waiving all future workers' compensation claim rights in connection with his slip-and-fall injuries, indicating a nexus between the termination and the charges; (b) the fact that Defendant's claim

of severe fiscal challenges from 2011 to 2014 is refuted by the fact that the number of approved full-time positions during that time remained constant, any decrease in tuition due to declining student enrollment was offset by increase State aid, and College President Kevin Drumm testified in a deposition that "[f]rom my thinking" the university's decision to terminate Plaintiff was "[n]ot all [due to] fiscal challenges"; (c) the fact that Defendant's claim that Plaintiff's salary of $34,223 was saved is refuted by the fact that it was reallocated to two new positions that incorporated duties similar to those incorporated in his position but cumulatively costed $94,000; (d) the fact that, as an African-American over the age of fifty, Plaintiff was the only employee who was classified as a "layoff" from the entire College staff during the 2012-2103 year; (e) the fact that Defendant's claim that Plaintiff's position was obsolete is refuted by the fact that its assigned duties were reallocated to new positions; (f) the fact that, although Defendant considered creating a "mini" version of Plaintiff's position (involving work only six hours per week), Defendant would have offered it to Plaintiff only if it was titled the same as his prior position, showing no indication that Defendant would have considered Plaintiff for the position had it not had the same title as his prior position (despite requiring the same duties); and (g) the fact that, in general, minorities have "regularly" made up a very small composition of Defendant's workforce (for example, African-Americans approximately 2.0 percent in 2011, and 2.5 percent in 2012, compared to the percentage of African-Americans in the population generally, which he asserts is 10 percent), evidencing "institutional racism" by Defendant.  (Dkt. No. 24.)

Second, argues Plaintiff, neither the Article 78 decision nor the Workers' Compensation Board decision referenced by Defendant is entitled to collateral estoppel effect over Plaintiff's

Title VII, ADA and Rehabilitation Act claims, because (a) the Article 78 decision resolved issues different from those raised in the current action, (b) the Workers' Compensation Board decision is not entitled to preclusive effect in a Title VII proceeding unless it has been affirmed by a state court judgment (which it has not yet been), and (c) the Workers' Compensation Board decision was preceded by a contrary decision and in any event is now being appealed. (*Id.*)

Third, argues Plaintiff, he is disabled within the meaning of the Rehabilitation Act, because (a) he fell on a wet floor while working and suffered serious physical injuries on August 25, 2011, (b) he was out of work until October 31, 2011, and (c) he continues to suffer a number of physical restrictions in his daily life as a result of his injuries, including mandatory restrictions placed by doctors on August 25, 2011, and October 7, 2014, regarding his lifting, pulling, stooping and standing. (*Id.*)

### 3. Defendant's Reply Memorandum of Law

Generally, in his reply memorandum of law, Defendant assert three arguments. (Dkt. No. 25.)

First, Defendant argues, the seven pieces of evidence adduced by Plaintiff do not show that Defendant's asserted reasons for his termination were pretextual: (a) Plaintiff's assertion of a nexus (between his termination and Defendant's fraud charges) is contradicted by the finding of the Workers' Compensation Board that no such nexus existed and that Defendant had a legitimate business reason for the termination; (b) his reliance on the constant number of approved full-time positions during the time in question ignores that twenty-one of those positions were unfunded in 2011-2012 and twenty-eight of those positions were unfunded in 2012-2013 and 2013-2014, his assertion that any decrease in tuition was offset by an increase

State aid is not supported by the record (which shows that, even with increased State aid, Defendant had to reduce personnel costs by more than $1.0 million to balance its budget), and his reliance on page 86 of President Drumm's deposition testimony (stating that the decision to terminate Plaintiff was not all due to fiscal challenges) ignores page 72 of that deposition testimony (explaining that the decision was *also* due to the previously determined need to reorganize two departments and the fact that it would be unethical to keep a person in a position that one does not need); (c) Plaintiff's assertion that his position (which paid $34,223) was similar to one or both of two new positions (which cumulatively paid $94,000) was previously made to, and rejected by, the New York State Supreme Court, collaterally estopping him from making it again in this action; (d) his reliance on the fact that, as an African-American over the age of fifty, he was the only employee who was classified as a "layoff" from the entire College staff during the 2012-2103 year is undermined by the evidence that 58 percent of the employees at the College were age fifty and over (eleven of whom were African-American) as of January 2013, Defendant first hired Plaintiff when he was 49 and continued to employee him through his mid-fifties, he was not replaced in the Audio Video Services Manager position, his job was eliminated due to economic necessity, and the New York State Supreme Court found no evidence of race of age discrimination in his termination; (e) his assertion that his position could not have been obsolete because its assigned duties were reallocated to new positions was made to, and rejected by, the New York State Supreme Court, collaterally estopping him from making it again in this action; (f) his assertion that Defendant did not offer him any of the new positions based on his race and/or age is undermined by the fact that the New York State Supreme Court found that no race or age discrimination in its treatment of him, and that the Court must respect

Defendant's discretion to select other qualified candidates; and (g) in Broome County, African-Americans constituted only 4.8 percent of the population in 2010 and only 5.7 percent of the population in 2014 (much less than the 10-percent figure asserted by Plaintiff) and, in any event, the statistics cited by Plaintiff (which, incidentally, show that 58 percent of the employees at the College were age fifty and over as of January 2013) do not account for relevant variables such as the pool of applicants and the number of African-Americans who met the minimum education requirements for positions at the College, rendering the statistics unreliable. (*Id*.)

Second, Defendant argues, the decisions of the New York State Supreme Court and Workers' Compensation Board preclude Plaintiff's claims, because (a) the New York State Supreme Court decision contained factual findings of litigated issues identical to issues raised in the current action with regard to all of Plaintiff's claims including those under Title VII and the ADEA, (b) the Workers' Compensation Board decision (which found a legitimate business reason for the elimination of Plaintiff's position) is binding on Plaintiff's claims under 42 U.S.C. § 1983 and the Rehabilitation Act (as evident by the fact that the cases cited by Plaintiff do not regard the preclusion of claims under 42 U.S.C. § 1983 or the Rehabilitation Act), and (c) to the extent the Workers' Compensation Board decision is not preclusive, the Court may and should accord substantial weight to the decision regarding the validity of Defendant's reasons for terminating Plaintiff (and the Court should accord no weight to the Administrative Law Judge's decision given that it was reversed on appeal by the Workers' Compensation Board). (*Id*.)

Third, Defendant argues, the evidence adduced by Plaintiff in his response does not establish that he had a disability under the Rehabilitation Act at the time his position was eliminated on January 25, 2013, for two reasons: (1) the emergency room report dated August

25, 2011, which is unsworn, identifies injuries less severe than those required to constitute a disability and in any event are contradicted by the papers from Plaintiff's doctor received by Defendant when Plaintiff returned to work on October 31, 2011, without work restrictions; and (b) the independent medical examination dated October 7, 2014, which was based primarily on records from 2013 and 2014, post-dates the date that his employment ended by nearly two years. (*Id*.)

### C.     Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported by Defendant in its statement of material facts and admitted by Plaintiff in his response thereto.  (*Compar*e Dkt. No. 19, Attach. 22 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 23 [Plf.'s Rule 7.1 Response].)

1.      Plaintiff was hired by Broome Community College ("the College") for the position of Audio-Visual Services Manager in March 2006.

2.      At the time he was hired, Plaintiff was forty-nine years old.

3.      In 2011, President Kevin Drumm charged Vice President Regina Losinger with the task of coming up with a plan to reorganize both the Information Technology Department and Web and Media Services Department. President Drumm assigned Ms. Losinger this task because he had been hearing complaints on campus for more than a year regarding confusion between the two departments and their inability to function efficiently.[1]

---

[1]      (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 5 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 5 [Plf.'s Rule 7.1 Response, admitting facts or failing to support denial with an accurate record citation].) The Court notes that Plaintiff denies knowledge of what complaints were made to President Drumm regarding these departments.  (Dkt. No. 23, at ¶ 5 [Plf.'s Rule 7.1 Response].)  However, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute. *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for

4. At the time, the College was facing fiscal challenges due to a reduction in New York State funding and a decline in student enrollments (and tuition revenues).[2]

5. For the 2011-2012 school year, the College experienced a $2.6 million cut in New York State funding.

6. For the 2011-2012 to 2013-2014 school years, the College experienced a decline in full-time equivalent student enrollment by approximately 10 percent.[3]

7. The College's 2012-2013 budget asserts that each 1 percent drop in student

---

summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated."). The Court also notes that Plaintiff denies that any complaints were ever made about Plaintiff or his work performance. (Dkt. No. 23, at ¶ 5 [Plf.'s Rule 7.1 Response].) However, the above-stated fact does not assert that any complaints were ever made about Plaintiff or his work performance. *See Yetman v. Capital Dis. Trans. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) (citing authority for the point of law that the summary judgment procedure involves the disputation of *asserted* facts, not the disputation of *implied* facts).

[2] (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 6 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 6 [Plf.'s Rule 7.1 Response, admitting facts or failing to support denial with an accurate record citation].) The Court notes that Plaintiff attempts to assert other facts that appear designed to undermine the extent of the fiscal challenge faced by Defendant. Because Defendant did not characterize the extent of the fiscal challenges, Plaintiff's attempt at minimization is immaterial. *See Yetman*, 2015 WL 4508362, at *10 (citing authority for the point of law that the summary judgment procedure involves the disputation of *asserted* facts, not the disputation of *implied* facts); *cf. Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (noting that plaintiff's responses failed to comply with the court's local rules where "Plaintiff's purported denials . . . improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts"); *Goldstick v. The Hartford, Inc.*, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (striking plaintiff's Rule 56.1 Statement, in part, because plaintiff added "argumentative and often lengthy narrative in almost every case the object of which is to 'spin' the impact of the admissions plaintiff has been compelled to make").

[3] (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 8 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 23, at ¶ 8 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with an accurate record citation].)

enrollment results in a $330,000 loss of operating revenues (reasoning that each percentage of

student enrollment brings in $330,000 in operating revenues).[4]

8. To address these lost revenues, the College took several steps. In the 2011-2012

budget, the College did not fund twenty-one full-time positions approved for 2011-2012 or five

percent of its total full-time positions for 2011-2012.[5]

9. In the same budget, the College also reduced contractual expenses by more than

$1.1 million. In addition, the College doubled its fund balance appropriation, increasing it from

$1.0 million to $2.0 million.

10. As a result, the College's total revenues were reduced by 0.8 percent as compared

to 2010-2011.

11. In 2012-2013, the College addressed its budget issues by not funding an

additional seven full-time positions approved for 2012-2013, bringing the total number of full-

time, not-funded positions to twenty-eight, or seven percent of its total full-time positions.[6]

---

[4]      (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 9 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 9 [Plf.'s Rule 7.1 Response, admitting facts or failing to support denials with an accurate record citation].) The Court notes that, because Plaintiff attempts to undermine the veracity of the assertion as opposed to the fact of the assertion, his attempt is immaterial.

[5]      (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 10 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 10 [Plf.'s Rule 7.1 Response, failing to support denial with accurate record citation].) The Court notes that Plaintiff attempts to challenge an implication of the asserted facts and/or place them in the context of other facts. This attempt is insufficient to create a genuine dispute regarding the facts asserted by Defendant. *See, supra,* note 2 of this Decision and Order (citing cases).

[6]      (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 13 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 23, at ¶ 13 [Plf.'s Rule 7.1 Response, failing to support denial with accurate record citation].) Again, Plaintiff's attempt to challenge an implication of the asserted fact and/or place it in the context of another fact is insufficient to create a genuine dispute regarding the fact asserted by Defendant. *See, supra,*

12. The College reduced its personnel costs by approximately $1.0 million. In addition, the College reduced its fund balance appropriation by $622,854 as compared to 2011-2012.

13. The 2012-2013 budget year runs from September 1, 2012, to August 31, 2013.

14. The College's total revenues for 2012-2013 decreased by 0.3 percent as compared to 2011- 2012.

15. In the 2013-2014 budget, the College continued to not fund twenty-eight full-time positions approved for 2013-2014.[7]

16. Between the 2011-2012 budget year and the 2013-2014 budget year, student enrollment declined by approximately 10 percent.[8]

17. The personnel cuts made by the College in 2012-2013 resulted in a $1.0 million savings to the College.[9]

18. In addition, the College commenced reorganizing the Information Technology

---

note 2 of this Decision and Order (citing cases).

[7] (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 17 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 23, at ¶ 17 [Plf.'s Rule 7.1 Response, failing to support denial with accurate record citation].) Again, Plaintiff's attempt to challenge an implication of the asserted fact and/or place it in the context of another fact is insufficient to create a genuine dispute regarding the fact asserted by Defendant. *See, supra,* note 2 of this Decision and Order (citing cases).

[8] (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 18 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 23, at ¶ 18 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with accurate record citation].)

[9] (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 21 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 21 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with accurate record citation].)

Department and Media Services Department.[10]

19.     President Drumm believed that there were many disputes between the two departments over who was responsible for certain duties.[11]

20.     As part of the reorganization, Ms. Losinger looked for where functions should be placed within the two departments and what positions, if any, were no longer needed. While the original purpose of the reorganization did not include eliminating positions, each position was evaluated to determine if it was currently needed.[12]

21.     During this time, the College did not keep every open position vacant. Instead, the College determined if an open position was needed going forward.  In the case of the Audio-

---

[10]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 22 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 22 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with accurate record citation].)

[11]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 23 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 23 [Plf.'s Rule 7.1 Response, failing to deny fact or support denial with an accurate record citation].) The Court notes that Plaintiff denies knowledge of what complaints were made to President Drumm regarding these departments, or what disputes took place.  (Dkt. No. 23, at ¶ 5.)  However, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute. *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated."). The Court also notes that Plaintiff denies that any complaints or disputes regarded Plaintiff or his work performance.  (Dkt. No. 23, at ¶ 5.)  However, the above-stated fact does not assert that any complaints or disputes ever regarded Plaintiff or his work performance.  *See Yetman*, 2015 WL 4508362, at *10 (citing authority for the point of law that the summary judgment procedure involves the disputation of *asserted* facts, not the disputation of *implied* facts).

[12]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 24 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 24 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with accurate record citation].)

Visual Services Manager position, the College determined that it was obsolete.[13]

22.     This determination was based on several factors, including changing technological advances, new software systems eliminating the need for an individual to log in paper work orders, standardization of media equipment on campus, and permanent installation of media equipment in classrooms. The College believed that what duties remained accounted for about four to six hours of work a week and could be absorbed by other employees at the College.[14]

23.     When Plaintiff's position was eliminated, he was placed on a preferred eligible list pursuant to the Civil Service Law.[15]

---

[13]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 25 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *with* Dkt. No. 23, at ¶ 25 [Plf.'s Rule 7.1 Response, failing to deny above-stated facts or support denial with an accurate record citation].)

[14]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 26 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *with* Dkt. No. 23, at ¶ 26 [Plf.'s Rule 7.1 Response, failing to deny facts or support denial with an accurate record citation].)  The Court notes that Plaintiff attempts to dispute the College's belief (i.e., that what duties remained could be absorbed by other employees) by relying on job description postings.  (Dkt. No. 23, at ¶ 26 [Plf.'s Rule 7.1 Response].)  The postings controvert neither the College's belief nor the fact believed.

[15]     The Court notes that, after admitting the above-stated fact, Plaintiff asserts that he has never been called from the preferred eligible list.  (Dkt. No. 23, at ¶ 27 [Plf.'s Rule 7.1 Response].)  This additional assertion has no legal effect in Plaintiff's Rule 7.1 Response. *See, supra,* note 2 of this Decision and Order (citing cases); *see also, e.g., Washington v. City of New York*, 05-CV-8884, 2009 WL 1585947, at *1 n.2 (S.D.N.Y. June 5, 2009) (holding that "the statement provided by Defendants is taken as true because Plaintiff[']s initial response in each instance is 'Admit'"); *CA, Inc. v. New Relic, Inc.*, 12-CV-5468, 2015 WL 1611993, at *2 n.3 (E.D.N.Y. Apr. 8, 2015) (holding that "the Court will consider the statement provided by [Plaintiff] as undisputed because [Defendant's] initial response in each instance is, in fact, 'Undisputed'").

24.     The position of Audio-Visual Services Manager remains eliminated.[16]

25.     On January 25, 2013, Plaintiff was laid off.

26.     On August 25, 2011, Plaintiff fell in the on-campus cafeteria and was injured.

27.     Plaintiff was out of work until October 31, 2011.

28.     Plaintiff's physician indicated that Plaintiff was temporarily totally disabled.

29.     Plaintiff's physician released him to return to work on October 31, 2011.

30.     Plaintiff was released to work with no work restrictions.[17]

31.     Plaintiff continued to work full time from October 31, 2011, until his employment ended on January 25, 2013.

32.     After his position was eliminated, Plaintiff commenced a proceeding under New York CPLR Article 78 challenging the elimination of his position. In a Decision and Order dated October 3, 2013, the New York Supreme Court found that Plaintiff did not satisfy his burden to "eliminate bona fide reasons for the elimination of the position, show no savings were accomplished or [show] that someone was hired to replace him."[18]

---

[16]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 28 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citation] *with* Dkt. No. 23, at ¶ 28 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with an accurate record citation].)

[17]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 34 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 34 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial with accurate record citation].)  The Court notes that, after admitting the above-stated fact, Plaintiff asserts that doctors placed mandatory physical restrictions on him, including for lifting, pulling, stooping, and standing to the extent that it would exacerbate his back problems.  (Dkt. No. 23, at ¶ 34 [Plf.'s Rule 7.1 Response].)  This additional assertion is insufficient to controvert the fact asserted by Defendant. *See, supra,* note 2 of this Decision and Order (citing cases); *see also, supra,* note 15 of this Decision and Order (citing cases).

[18]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 36 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 36 [Plf.'s Rule 7.1

33.     Plaintiff also filed a complaint with the New York Workers' Compensation Board alleging a violation of Section 120 of the New York Workers' Compensation Law.  In a decision dated September 9, 2015, the Workers' Compensation Board Panel found that there was a legitimate business reason for the elimination of the Audio-Visual Services Manager position.[19]

34.     In 2013, Plaintiff submitted applications for the Assistant Director of Technical Services position and a full-time Technical Assistant position.[20]

35.     Both positions were filled through the use of search committees.[21]

---

Response, failing to support denial of fact with accurate record citation].)

[19]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 37 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 37 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].) The Court notes that, after admitting the above-stated fact, Plaintiff asserts that, before the issuance of the above-referenced decision, a Workers' Compensation Law Judge initially upheld Plaintiff's claims Section 120 of the New York Workers' Compensation Law.  (Dkt. No. 23, at ¶ 37 [Plf.'s Rule 7.1 Response].)  This additional assertion is insufficient to controvert the fact asserted by Defendant. *See, supra,* note 2 of this Decision and Order (citing cases); *see also, supra,* note 15 of this Decision and Order (citing cases).

[20]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 38 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 38 [Plf.'s Rule 7.1 Response, failing to support denial of fact with an accurate record citation].)  The Court notes that Plaintiff's denial is flawed in two independent ways: (1) it challenges a fact not asserted by Defendant (i.e., that Plaintiff submitted applications *only* for the Assistant Director of Technical Services position and a full-time Technical Assistant position); and (2) in any event, it cites evidence establishing merely that Plaintiff submitted a "letter of interest" for another position (i.e., a part-time Technical Assistant position), which differs from submitting an *application* for that position.  (*See, e.g.,* Dkt. No. 24, Attach. 21, at 2 [Ex. S, attaching job posting indicating that "application materials" consist of a "letter of interest, resume and the name, address and phone number of three references"]; Dkt. No. 19, Attach. 19, at 1 [Ex. P, containing email from Plaintiff stating that he "will provide a resume and packet for the Technician position"]; Dkt. No. 19, Attach. 20, at 2 [Ex. Q, containing memorandum expressing strength of finalists' "resumes"].)

[21]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 39 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 39 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

46.     It is a regular procedure for the College to use search committees made up of College faculty and staff to evaluate candidates and make a recommendation to the administration regarding the best candidate.[22]

37.     Separate search committees were created for the two openings. Paige Sedlacek, the College's Affirmative Action/Title IX Officer, participated in both searches. She was a voting member of the search committee for the Assistant Director position, and a non-voting member of the search committee for the Technical Assistant position.[23]

38.     Plaintiff was one of the six candidates selected for an interview with the committee for the Assistant Director position.

39.     The search committee did not recommend Plaintiff as one of the finalists for either position. The search committee did not feel that Plaintiff's interview was as strong as that of the other candidates who were recommended for the position.[24]

40.     Some of the concerns the committee members had were that Plaintiff talked

---

[22]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 40 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 40 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

[23]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 41 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 41 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

[24]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 43 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 43 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].) The Court notes that Plaintiff's denial is flawed in two independent ways: (1) it does not challenge the *fact* of the search committee's finding but the *validity* of that finding (which was never asserted by Defendant); and (2) in any event, it wholly ignores Plaintiff's interview performance, which was the subject of the search committee's finding.

around the answers to questions and did not give concrete examples.[25]

41.     The names of the finalists were forwarded to the College's Director of lnformation Technology, John Petkash. Mr. Petkash interviewed the finalists and recommended Fermin Romero for the position of Assistant Director for Technology Services.

42.     A separate search committee reviewed the applications for the full-time Technical Assistant position.[26]

43.     Plaintiff did not submit an application for the part-time Technical Assistant position.[27]

44.     Upon the initial review of the candidates' resumes, Plaintiff was not selected for an interview for the full-time Technical Assistant position. Plaintiff received one "maybe"

---

[25]     (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 44 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 44 [Plf.'s Rule 7.1 Response, failing to deny fact or support denial with an accurate record citation].) The Court notes that Plaintiff states that he cannot admit or deny that all committee members shared the same or any concerns regarding his interview.  (Dkt. No. 23, at ¶ 44 [Plf.'s Rule 7.1 Response].) However, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute.  *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated.").

[26]     (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 46 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citation] *with* Dkt. No. 23, at ¶ 46 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

[27]     (*Compar*e Dkt. No. 19, Attach. 22, at ¶ 47 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 47 [Plf.'s Rule 7.1 Response, failing to support denial of fact with an accurate record citation].)  The Court notes that Plaintiff's denial cites evidence establishing merely that he submitted a "letter of interest" for the part-time Technical Assistant position, which again differs from submitting an *application* for that position.  *See, supra,* note 20 of this Decision and Order.

vote from the committee.[28]

45.     Most of the candidates selected for an interview had at least four positive votes.[29]

46.     On December 19, 2012, Plaintiff stated in an email to Ms. Losinger that he knew there were "no guarantees" that he would receive either position.[30]

47.     The decision to hire other candidates for these two positions was based on their qualifications.[31]

---

[28]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 48 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 48 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

[29]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 49 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 49 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].)

[30]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 50 [Def.'s Rule 7.1 Statement, asserting fact and supporting it with accurate record citations] *with* Dkt. No. 23, at ¶ 50 [Plf.'s Rule 7.1 Response, admitting fact and/or failing to support denial of fact with accurate record citation].) Plaintiff's denial is flawed in two independent ways: (1) it does not challenge the *fact* of his statement to Ms. Losinger but the *truth* of that statement; and (2) in any event, it does not cite evidence that, at the time, Plaintiff subjectively believed he was guaranteed the position, only that such a belief would arguably have been reasonable.

[31]     (*Compare* Dkt. No. 19, Attach. 22, at ¶ 51 [Def.'s Rule 7.1 Statement, asserting facts and supporting them with accurate record citations] *with* Dkt. No. 23, at ¶ 51 [Plf.'s Rule 7.1 Response, failing to deny fact or support denial with an accurate record citation].) The Court notes that Plaintiff states that he cannot admit or deny regarding the subjective basis and decision-making process to filling these positions.  (Dkt. No. 23, at ¶ 51 [Plf.'s Rule 7.1 Response].)  However, on a motion for summary judgment, denials of knowledge are insufficient to create a genuine dispute.  *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to . . . oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence and show that the affiant or declarant is competent to testify on matters stated.").

## II.  GOVERNING LEGAL STANDARDS

### A.  Legal Standard Governing Motions for Summary Judgment

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga Cty. Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.  Legal Standards Governing Plaintiff's Claims

Because the parties have demonstrated (in their memoranda of law) an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (*See generally* Dkt. No. 19, Attach. 23 [Def.'s Memo. of Law]; Dkt. No. 24 [Plf.'s Opp'n Memo. of Law]; Dkt. No. 25 [Def.'s Opp'n Memo. of Law].)

## III.  ANALYSIS

After carefully considering the matter, the Court grants Defendant's motion for each of the numerous reasons stated in its memoranda of law, the Court's prior summary of which is hereby incorporated by reference in this part of its decision.  *See, supra,* Parts I.B.1. and I.B.3. of this Decision and Order.  To those reasons, the Court adds the following analysis, which is intended to supplement not supplant Defendant's reasons.

With regard to the first piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (i.e., the asserted nexus between Plaintiff's termination and Defendant's fraud charges against him), the Workers' Compensation Board expressly found that "the decision to eliminate [Plaintiff's] position . . . was not the result of discrimination or retaliation against [Plaintiff] for his workers' compensation claim and injuries." (Dkt. No. 19, Attach. 5, at 7.) The Board made this finding as part of its determination of whether Plaintiff had demonstrated "a causal nexus between his intent to claim workers' compensation benefits and [Defendant's] alleged retaliatory conduct." (*Id.*) As a result, the Court finds that this issue (which hinged on Plaintiff's November 2012 rejection of Defendant's alleged offer to withdraw its fraud charge if he waived all future workers' compensation claim rights in connection with his slip-and-fall injuries) is identical to the issue raised by Plaintiff in the current action. Moreover, the Court finds that Plaintiff had a full and fair opportunity to litigate the issue in the Board proceeding; the issue was actually litigated and decided; and the issue was necessary to support a valid and final judgment on the merits. This finding is binding of Plaintiff's claims under 42 U.S.C. § 1983 and the Rehabilitation Act. *See, e.g., Kosakow v. New Rochelle Radiology Assoc., P.C.*, 274 F.3d 706, 728 (2d Cir. 2001).

Moreover, even setting aside the preclusive effect of the Board finding, Plaintiff's nexus argument is fatally flawed. Plaintiff argues that his termination was caused not by the reasons offered by Defendant (i.e., the consolidation of two departments, the fiscal challenges facing Defendant, and the obsolescence of Plaintiff position) but by "Defendant's charges against him." (Dkt. No. 24, at 10 [attaching page "7" of Plf.'s Opp'n Memo. of Law].)[32] The charges were

---

[32] For the sake of brevity, the Court will not linger on the fact that the termination's being caused by the charges would not be the same as the termination's being caused by race and/or age; and, indeed, if the termination were caused *exclusively* by the charges, then the termination could not have been caused also by race and/or age.

filed in March 2012, indicating little if any nexus with Plaintiff's termination some ten months later. For this reason, Plaintiff relies on what he characterizes as Defendant's "continued . . . pursui[t]" of the charges (despite his rejection of its settlement offer) on November 21, 2012, more than nine weeks before his termination (on January 25, 2013). (*Id*.) Of course, Defendant also "continued" its "pursuit" of those charges the day Plaintiff returned to work in July 2012 (a date *not* cited by Plaintiff as the cause of his termination); and, if a "continued" pursuit of charges by itself could undermine asserted grounds for a termination, then a termination imposed during the pendency of charges would never be upheld. The reason Plaintiff selects November 21, 2012, as the date of the asserted reason for his termination is that, on that date, he communicated to Defendant his refusal to waive his right to any future lost wage claims that he may make with regard to his slip-and-fall injuries, and deduct 40 days from his current sick and vacation day accrual, in exchange for Defendant's withdrawal of its fraud charges against him. (Dkt. No. 24, Attach. 12, at 2.) Contained in Plaintiff's argument is the inference that (1) up until November 21, 2012, Defendant believed he would agree to such a waiver and deduction in exchange for such a withdrawal, and (2) on and after November 21, 2012, Defendant became so angered by the loss of that belief that it decided to retaliate against Plaintiff by terminating him nine weeks later.[33] However, the record is bereft of evidence that (1) during those nine weeks Plaintiff also communicated to Defendant that no counter-offer would be forthcoming from him in the future (such as one in which he proposed that Defendant withdraw its charges in exchange for *either* the waiver *or* the deduction), or (2) that Defendant expressed even the mildest irritation at receiving Plaintiff's rejection. Moreover, the drawing of the above-described

---

[33] Again, for the sake of brevity, the Court will not linger on the erroneous way that, in identifying the cause of his termination, Plaintiff treats as interchangeable Defendant's eight-month-old fraud charge (which was based on his prior assertion of workers' compensation claim rights) and his own future assertion of workers' compensation claim rights.

inference would require a disregard of (1) the evidence that Defendant previously determined that two departments needed to be consolidated, and (2) the evidence that Defendant's financial health required it to eliminate obsolete positions such as Plaintiff's position. Even without considering the substantial weight to be given to the New York State Supreme Court finding of a lack of nexus, the inference contained in Plaintiff's "nexus" argument is wholly speculative.

With regard to the second piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (i.e., conflicting financial data and deposition testimony from President Drumm), not only is Plaintiff's attempt at minimizing the fiscal challenges from 2011 to 2014 not supported by the record, it does not render the proffered reason by Defendant *false*. Regardless of whether the financial data were actually as bad as Defendant perceived them to be, the fact cannot reasonably be denied that Defendant faced fiscal challenges of at least some magnitude requiring it to reduce its personnel costs by approximately $1.0 million; nor can it be reasonably denied that, between approximately 2012 and 2013, it did not fund twenty-eight full-time positions, among them Plaintiff's position of Audio-Visual Services Manager; nor can it be reasonably be denied that Plaintiff's position remains eliminated; nor can it reasonably be denied that in 2011 (approximately two years before Plaintiff's position was eliminated) President Drumm determined that the Information Technology Department and Web and Media Services Department needed to be reorganized due to confusion and inefficiency. This last fact warrants some emphasis because it is the rather obvious reason President Drumm testified in his deposition that the decision to terminate Plaintiff was not *all* due to fiscal challenges.

With regard to the third piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (i.e., the fact that Plaintiff's salary was not saved but was simply reallocated to two new positions, which purportedly incorporated duties similar to those incorporated in Plaintiff's position), Plaintiff's reliance ignores (1) the prior determination that two departments (including his department) needed to be reorganized, (2) the evidence that, while some or perhaps all of the duties of his prior position may have been assigned to two new positions, the two new positions involved some duties not involved in his prior position (justifying their creation), and (3) the evidence that more than two dozen other approved full-time positions were not funded (freeing up funds for the funding of the two new positions and preserving the savings from the elimination of Plaintiff's position). Moreover, Plaintiff's argument (that his position incorporated duties similar to those duties incorporated in two new positions) was previously made to, and rejected by, the New York State Supreme Court, collaterally estopping him from making it again in this action. Specifically, in considering and rejecting Plaintiff's argument that when it abolished his position Defendant created substantially similar new positions resulting in no net savings, the New York State Supreme Court ruled as follows:

> [T]he court finds that despite [Plaintiff's] somewhat conclusory claims to the contrary, the newly created positions are not the same or substantially similar to that of the Audio Visual Services Manager. . . . The Audio Visual Service Manager's duties entail dealing with, not surprisingly, audio visual equipment. The new positions deal with Information Technology (IT), i.e. computer software and hardware. . . . [These duties] are clearly different in nature.

(Dkt. No. 19, Attach. 4, at 2-3.)

With regard to the fourth piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (i.e., the fact that he was the only employee who was classified as a "layoff" during the 2012-2103 year), Plaintiff's evidence is unaccompanied by (1) evidence of any racial or age-related comments, (2) evidence of the retention of a single Caucasian worker and/or a worker under the age of fifty in either Information Technology Department and Web and Media Services Department (both of which President Drumm had previously determined needed reorganization) whose job was also found to be obsolete, or (3) evidence that he was replaced by anyone, much less a Caucasian worker and/or a worker under the age of fifty. Moreover, Plaintiff's reliance ignores fact that more than two-dozen other approved full-time positions (at least some of which presumably would have been filled by Caucasians or workers under age fifty) were also unfunded. Simply stated, a rational factfinder could not infer from Plaintiff's fourth piece of evidence that Defendant's proffered reasons for his termination were pretextual.

With regard to the fifth piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (i.e., the fact that his assigned duties were reallocated to new positions, meaning that his position could not have been obsolete), Plaintiff's implicit argument (that a position cannot be obsolete where it has been divided into two positions) ignores the fact that a position may become obsolete precisely *because* its duties have so evolved as to now be more efficiently performed by two or more separate positions (such as that of an alchemist, whose duties are now performed by specialists such as metallurgists, chemists and pharmacists, or that of a scribe, whose duties are now performed by specialists such as secretaries, publishers and librarians, or that of a switchboard operator, whose jobs are now

performed by specialists such as directory assistance operators, customer service representatives and receptionists). In any event, again, Plaintiff's underlying premise (that his assigned duties are now performed by new positions) has been considered and rejected by the New York State Supreme Court, which expressly found that "the newly created positions are not the same or substantially similar to that of the Audio Visual Services Manager," because the duties of the former and the latter "are clearly different in nature." (Dkt. No. 19, Attach. 4, at 2-3.)

Skipping the sixth piece of evidence that Plaintiff relies on to show that Defendant's proffered reasons for his termination were pretextual (to which the Court has nothing to add), and turning toward the seventh piece of evidence that Plaintiff relies on (e.g., the fact that African-Americans have "regularly" made up between 2.0 and 2.5 percent of Defendant's workforce compared to the asserted 10 percent of African-Americans in the population generally, evidencing "institutional racism" by Defendant), by itself the statistical evidence cited by Plaintiff is insufficient to permit a rational factfinder to infer that Defendant's proffered reasons for his termination were pretextual. Granted, it is well settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation. For the sake of brevity, the Court will assume that the sample size of two years (2011 and 2012) is large enough (when one also considers such factors as the number of years Defendant has existed, the frequency of employee turnover, etc).[34] The main problem with

---

[34] *See Haskell v. Kaman Corp.,* 743 F.2d 113, 120 (2d Cr. 1984) ("For . . . statistical evidence to be probative, . . . the sample must be large enough to permit an inference that age was a determinative factor in the employer's decision."), *Gray v. Robert Plan Corp.*, 991 F. Supp. 94, 104 (E.D.N.Y. 1998) ("[S]tatistical evidence based upon small samples is generally not probative of discrimination . . . because statistical significance becomes harder to attain as the sample size shrinks.") (internal quotation marks and citation omitted).

Plaintiff's statistical evidence (apart from its failure to account for the percentage of African-Americans in the relevant geographical area in 2011 and 2012, and the lack of confidence that employees identified their races consistent with how races were identified in the U.S. Census)[35] is that it must contain more details to be probative.[36] Such details might include (1) the number of African-Americans who applied for positions in 2011 and 2012, (2) their qualifications in relation to those of other applicants, (3) whether any such applicants were offered employment but declined, and/or (4) the races of those employees in 2011 and 2012 who chose either to not identify their race or to identify it as "Other/Blank."[37] Charging Defendant with institutional

---

[35] The Court notes that, in 2000, the U.S. Census Bureau started permitting individuals to identify their races as biracial or multi-racial. However, in the data relied on by Plaintiff, it appears that employees were asked to identify only one race, having to select for example between Hispanic and African-American. (Dkt. No. 24, Attach. 14.)

[36] *See Smith v. Xerox Corp.*, 196 F.3d 358, 371 (2d Cir. 1999) ("[P]laintiffs' statistical analyses fail to account for other possible causes for the fact that older (or male) workers were more likely to be terminated. . . . Multiple regression analyses, such as those performed by the defendant's expert, would have been appropriate to eliminate other possible causes. . . . Plaintiffs' hypothesis testing only showed that chance was most likely not responsible for the perceived difference in treatment of the older (or male) workers; this methodology could not, by itself, support a conclusion that discrimination must have been the cause for the disparity."), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006); *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 203 (2d Cir. 1999) ("[T]he Report's inference of discrimination solely on the basis of the raw numbers is impermissible in the absence of any attempt to account for other causes of the age 50-59 anomaly. . . . Gaudard made no attempt in this part of the Report to examine how many level 9+ managers age 50-59 left Cyanamid voluntarily from 1984 to 1989, or how many people in that age grouping applied to Cyanamid during that period."), *abrogation on other grounds recognized by Lomotey v. Conn.-Dep't of Transp.*, 155 F. App'x 478 (2d Cir. 2009); *see also Smith v. New Venture Gear, Inc.*, 319 F. App'x 52, 55 (2d Cir. 2009) ("Without details of the circumstances behind disciplinary actions, the [statistical] report was unable to assess the justification for the discipline and therefore determine whether the disciplinary action taken was justified.") (internal quotation marks omitted).

[37] The Court notes that, in 2012, eleven employees chose either to not identify their race or to identify it as "Other/Blank." (Dkt. No. 24, Attach. 14.)

racism based solely on the limited statistics cited by Plaintiff is as unreasonable as charging a business with institutional racism based solely on the fact that it employees ten Caucasians and no minorities.

Finally, with regard to the third argument asserted in Plaintiff's opposition memorandum of law (i.e., he suffered serious physical injuries on August 25, 2011, he was out of work until October 31, 2011, and he continues to suffer a number of physical restrictions, including mandatory restrictions placed by doctors on his lifting, pulling, stooping and standing), the Court finds that (1) any impairment identified by one of his physicians (Tracey Reilly, M.D.) when Plaintiff was discharged from a hospital emergency department on August 25, 2011, had improved by October 31, 2011, when he was released to work by one of his other physicians (Douglas R. Kerr, M.D.) with no work restrictions, and (2) by the time Plaintiff was examined on September 30, 2014, by a third physician (Bradley D. Wiener, M.D.), more than 20 months had elapsed since his termination on January 25, 2013.  Such a delay is simply too long to create a genuine dispute of material fact, especially in light of the undisputed fact that Plaintiff had no work restrictions less than fifteen months before his termination (on October 31, 2011), and the lack of contemporaneous record evidence that Plaintiff experienced a turn for the worse in his condition between October 31, 2011, and January 25, 2013.  Indeed, Plaintiff's own record evidence indicates that the turn for the worse occurred *after* January 25, 2013.  (*See, e.g.,* Dkt. No. 29, Attach. 4, at 3-4 [indicating that Dr. Eric Seybold imposed a 10-pound lifting restriction on Plaintiff on August 21, 2013, and that Dr. Wiener imposed a 15-pound lifting, carrying, pushing or pulling restriction on Plaintiff on September 30, 2014].)  Under the circumstances, Plaintiff has not adduced evidence from which a rational factfinder could not infer that, in

January of 2013, Plaintiff suffered from a physical or mental impairment that substantially limited a major life activity. In any event, even if he has adduced evidence of such an impairment at that time, the Court finds (for the reasons set forth above) that he has not adduced evidence from which a rational factfinder could infer that the sole reason for Defendant's action was discrimination based on his disability.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion for summary judgment is **GRANTED** (Dkt. No. 19); and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court shall issue a Judgment for Defendant and close this action.

Dated:  August 11, 2016
     Syracuse, NY

              Hon. Glenn T. Suddaby
              Chief U.S. District Judge